UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSE R. PALACIOS-RODRIGUEZ,

Petitioner,

v.

ROBERT BUECHELE, et al.,

Respondents.

Civil Action No. 15-414 (MCA)

OPINION

**ARLEO, United States District Judge:**

Presently before the Court is the petition for a writ of habeas corpus of Jose R. Palacios-Rodriguez ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging Petitioner's state court conviction. (ECF No. 1.) Following an order to answer, Respondents filed a response to the petition. (ECF No. 3.) For the following reasons, this Court will deny the petition and will deny Petitioner a certificate of appealability.

## I. BACKGROUND

In its opinion affirming Petitioner's conviction, the Superior Court of New Jersey – Appellate Division provided the following factual summary of the background of this matter:

> [O]n the afternoon of June 28, 2008, [Petitioner], the victim ([Petitioner's] cousin) and two others were sitting in the living room of their home drinking beers when the victim grabbed [Petitioner] and threw him down on the sofa. . . . The victim pushed [Petitioner] down and told him that he was not a man. After a struggle, the victim let [Petitioner] up, but then [Petitioner] pursued the victim through the house stabbing the victim in the back and the chest.
>
> [Petitioner] left the house and walked to work. Later that evening, the police apprehended [Petitioner] outside of his workplace. When arrested, [Petitioner] provided the police with a false name. Officers transported [Petitioner] to the Ramsey Police Headquarters, where he was placed in a holding cell and subsequently fell asleep. [Petitioner] later participated in a videotaped interview with Detectives James Brazofsky, Brian Huth and Luis Alvarez.

1

Prior to trial, [Petitioner] moved to suppress his confession, and the judge conducted a *Miranda*[1] hearing. Brazofsky, Huth and Alvarez testified regarding the interrogation. Brazofsky testified that he and Huth brought [Petitioner] into an interview room at the Bergen County prosecutor's office. The interview was conducted in Spanish initially by Brazofsky, then later by Alvarez. Before questioning [Petitioner], Brazofsky advised him that his consent was necessary and it was his option to discuss the incident. Brazofsky noticed that [Petitioner's] eyes appeared bloodshot and his speech was slurred, but stated that he took into account that [Petitioner] had recently been asleep. Brazofsky testified that he smelled an odor of alcohol on [Petitioner's] breath.

[Petitioner] admitted to the detectives that he was illiterate, but Brazofsky testified that [Petitioner] understood their conversation, and [Petitioner] informed him that he understood Spanish, but not English. Brazofsky presented [Petitioner] with a *Miranda* waiver form translated into Spanish. Brazofsky read each of the warnings aloud in Spanish and questioned whether [Petitioner] understood. [Petitioner] initialed each paragraph and signed a written waiver. Huth later testified that although [Petitioner] appeared to have been drinking, he did understand Brazofsky's questions.

Brazofsky testified that he then began to question [Petitioner] about the incident, but called in Alvarez, a native Spanish speaker, to continue the interrogation. Alvarez testified that [Petitioner] was "calm, cooperative, attentive" and responded coherently during questioning. [Petitioner] repeatedly informed Alvarez that as a result of his drinking, he could not remember what had occurred. However, [Petitioner] stated that the victim pushed him down and claimed that he was not a man. [Petitioner] admitted to stabbing the victim two or three times with a knife. Alvarez testified that [Petitioner] detailed his placement of the knife during the altercation, its color, as well as the points of impact on the victim's body. [Petitioner] also stood up from his chair in order to physically demonstrate how he stabbed the victim. [Petitioner] informed the detective that after the stabbing, he left the house, threw the knife away and went to work.

The three-and-one-half-hour interrogation was videotaped. A transcript of [Petitioner's] interview and a portion of the videotape were provided to the court during the motion hearing and to the jury during the trial. The video shows [Petitioner] waiving his *Miranda* rights and confessing to the stabbing.

At the conclusion of the *Miranda* hearing, the judge denied [Petitioner's] motion. [Petitioner] thereafter asserted intoxication as a defense to the attempted murder and aggravated assault charges. Nevertheless, the jury found [Petitioner] guilty of attempted murder, aggravated assault and the two related charges.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

*State v. Palacios-Rodriguez*, No. A-0892-10T3, 2013 WL 4710521, at *1-2 (N.J. App. Div. Sept. 3, 2013).[2]

Petitioner was sentenced by the state trial court to a fourteen-year term of imprisonment, 85% of which was to be served without parole eligibility. *Id.* at *1. Petitioner appealed his conviction and sentence, and the Appellate Division, on September 3, 2013, affirmed. *Id.* The New Jersey Supreme Court denied certification in July 2014. *State v. Palacios-Rodriguez*, 218 N.J. 275 (2014).

Petitioner thereafter filed his habeas petition in this Court on January 21, 2015. (ECF No. 1). The petition raises two grounds for relief:

> GROUND ONE: [PETITIONER'S] RIGHT TO BE FREE FROM SELF INCRIMINATION WAS VIOLATED BECAUSE THE INTERROGATING DETECTIVE MISLEADINGLY QUALIFIED THE *MIRANDA* WARNINGS BY SAYING THAT [PETITIONER] COULD REMAIN SILENT, BUT THEN "WON'T HAVE THE OPPORTUNITY TO EXPLAIN." U.S. CONST. AMENDS. V, XIV.
>
> GROUND TWO: [PETITIONER'S] WAIVER OF HIS RIGHT TO BE FREE FROM SELF INCRIMINATION WAS NOT KNOWING BECAUSE HE WAS DRUNK, EXHAUSTED, AND ILLITERATE; THE WARNINGS WERE GIVEN IN SPANISH BY A NON-FLUENT DETECTIVE; THE WARNINGS WERE MISLEADING; [PETITIONER] RESPONDED NEGATIVELY WHEN ASKED IF HE UNDERSTOOD HIS RIGHT TO SILENCE; AND [PETITIONER] THEREAFTER TRIED TO CUT OFF THE INTERROGATION. U.S. CONST. AMENDS. V, XIV.

(ECF No. 1 at 5-6.)

---

[2] A certified copy from the Appellate Division of its decision in *State v. Palacios-Rodriguez* was also electronically filed by Respondents with their answer. (*See* ECF No. 3-3.)

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---, 132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, ("AEDPA"), Pub. L 104-132, 110 Stat. 1214 (Apr. 24, 1996), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 135 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by

overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The AEDPA standard under § 2254(d) is a "difficult" one to meet; it is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008).

**B. Analysis**

Both Grounds presented in Petitioner's habeas petition are rooted in Petitioner's assertion that his right against self-incrimination was violated during the course of his three-and-one-half hour interrogation on June 28, 2008. In Ground One, Petitioner asserts that the *Miranda* warning given to him by Detective Brazofsky before Petitioner provided his incriminating statement to police included "a substantially misleading qualification of the right-to-silence warning." (Pet'r's Br. 27, ECF No. 1-2.) In Ground Two, Petitioner asserts that his subsequent waiver of his right to remain silent was not knowing because "[e]ven if the *Miranda* warnings were perfect, [Petitioner] – a drunk exhausted, and illiterate immigrant – was in no condition to understand them." (*Id.* at 36.) Petitioner asserts that his inculpatory statements to police should have been suppressed in light of the foregoing. (*Id.* at 42.)

Petitioner raised all of these claims on direct appeal. *State v. Palacios-Rodriguez*, 2013 WL 4710521, at *2-3 (N.J. App. Div. Sept. 3, 2013). In ultimately affirming the state trial court's judgment and conviction of Petitioner, the Appellate Division analyzed these claims as follows:

> [Petitioner] contends that his confession should have been suppressed on several theories, namely that he was illiterate and non-English speaking and therefore did not understand his *Miranda* rights; he was so intoxicated that he was incapable of knowingly and voluntarily waiving his *Miranda* rights during the police interview; and he was provided misleading and pressure-laden "speak-now-or-hold-your-peace" advice from the detectives. . . .
>
> It is axiomatic that prior to any custodial interrogation, the police must advise the suspect of his or her *Miranda* rights. *State v. Brown*, 352 N.J. Super. 338, 351, 800 A.2d 189 (App. Div.) (citing *Miranda, supra*, 384 U.S. at 444, 86 S. Ct. at 1612, 16 L. Ed. 2d at 706), *certif. denied*, 174 N.J. 544 (2002). A waiver of these rights must be voluntary, knowing, and intelligent. *Ibid.* "The State must prove beyond a reasonable doubt that a defendant's confession was voluntary and was not made because the defendant's will was overborne." *State v. Knight*, 183 N.J. 449, 462, 874 A.2d 546 (2005), *certif. denied*, 189 N.J. 426, 915 A.2d 1049 (2007). A reviewing court must look at the totality of the circumstances, including such factors as "the characteristics of the defendant[,] the nature of the interrogation[,] . . . suspect's age, education and intelligence, advice concerning constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature, and whether physical punishment and mental exhaustion were involved." *State v. Galloway*, 133 N.J. 631, 654, 628 A.2d 735 (1993).
>
> We turn our attention to the dialogue on which [Petitioner] relies to assert that the detectives gave him misleading advice. In the opening minutes of the interview, Brazofsky informed [Petitioner] that his consent was needed for the interview:
>
>> Q: You need your response, if you want to talk to us, yes. Okay. And if it's possible, you can write "yes" and your initials? Do you know what are the initials of your name? The letters of your name, so that's Jose Rodriguez, J–R.
>>
>> A: R?
>>
>> Q: And the word, yes. *If you don't want to talk and don't want to explain, say no and the interview is terminated, but you won't have the opportunity to explain what happened, okay.* . . .

> Number [one] says, "you have the right to remain silent and refuse to answer any questions." Do you understand? Yes or no?
>
> A: Um-hmm.
>
> [(*Emphasis added*).]

[Petitioner] argues that this warning was false because if [Petitioner] had declined to explain the incident to the detectives at that time, he would have had many other opportunities in other settings, but that was not explained to him. [Petitioner] contends that . . . his rights were violated by these menacing words that conflicted with his right to remain silent.

. . . . The conversation continued as follows:

> Q: Yes or no? Yes? You have to say yes.
>
> A: Yes.
>
> Q: Out loud. Do you understand this?
>
> A: Well, yes.
>
> Q: Yes or no?
>
> A: It says that what ever question—[inaudible]—
>
> Q: Yes, do you understand this? Yes or no?
>
> A: Well, yes.
>
> Q: Yes?
>
> A: Uh-huh.
>
> Q: Okay, you need to say the words yes or no. And if you say no, I'll explain more. This says that you have the right to remain silent and refuse to answer any question, do you understand?
>
> A: Well, yes, because since I don't remember so well—
>
> Q: Okay, but you understand this right? Yes or no?
>
> A: Well, no, because since I don't know—[inaudible]—and we were all there together drinking and—

Q: Okay, yes, I understand that, before this, I need to explain to you your rights, this only says that you know your rights. If you understand this part, number one, that you have the right to remain silent, I need your response, yes, that you understand this or no and I'll explain more. Do you understand this part, that you have the right to remain silent, do you understand this?

A: No, well, no because I don't understand but I can tell you but I don't know.

Q: No, no. Sir, at this moment each person that I speak to, I need to explain their [c]onstitutional [r]ights, okay, every person has the option to speak to the police or no.

A: —[inaudible]—

Q: In this moment, I want to speak with you.

A: Yes.

Q: But before I speak with you or speak to you, I need to explain your rights and this says that you don't need to talk to the police, it's your decision. Okay.

A: Well, no, put down yes.

Q: Okay, at this moment, do you want to talk to me? Yes?

A: Well, yes.

Q: Okay, so this says that you have the right to not talk to me.

A: Yes.

Q: That is a right that you have. If you want, at this moment, to talk to me and him, me and him, you have the right to change your mind and say no, okay. It's your decision. In this moment, do you want to talk to us? Yes or no? Say yes or no.

A: No, well, yes.—[inaudible]—

Q: You want to talk to us?

A: Well, yes, I'll talk.

As noted, the motion judge viewed the videotape, and with regard to this portion of the interview, the judge stated:

> I was very impressed with . . . the amount of time that was spent with this [Petitioner] by [Brazofsky] in terms of his going over the form with this [Petitioner], the *Miranda* form, even to the point of explaining what a yes and no meant, even to the point of explaining to him the checklist, even to the point of explaining to him the ramifications of each question, which was explained in Spanish to this [Petitioner]. And I must say from looking at the video . . . , it appeared to me that no[t] only was the language communicated to [Petitioner] in a very correct manner—there's nothing to indicate that [Petitioner] didn't understand the terminology that [was] being explained to him through the interpretation. . . .

. . . . Here, Brazofsky's statement was not coercive and did not imply that [Petitioner] was required to respond. [Petitioner's] characterization of this statement as "speak now or forever hold your peace" is exaggerated. Brazofsky fully explained the right to remain silent and did not pressure [Petitioner] into speaking. . . .

There was no indication to [Petitioner] that this would be his final opportunity to speak. No such invocation was made by [Petitioner] as Brazofsky was merely explaining [Petitioner's] rights. Viewed in the context of the entire three-hour interview, this singular question is *de minimus*. . . . In sum, we reject [Petitioner's] contention that the officer's question was misleading or threatening such that it violated his constitutional rights.

Next, [Petitioner] contends that because he was intoxicated, he could not knowingly or voluntarily waive his rights. In assessing the voluntariness of an individual's waiver, a court must inquire as to "whether the suspect's will was overborne and whether the confession was the product of a rational intellect and a free will." *State v. Burris*, 145 N.J. 509, 534, 679 A.2d 121 (1996), *rev'd*, 298 N.J. Super. 505, 689 A.2d 860 (App. Div.), *certif. denied*, 152 N.J. 187 (1997). When inquiring as to whether a defendant waived his rights knowingly and intelligently, a court must examine whether a defendant waived his right "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *State v. Reed*, 133 N.J. 237, 270–71, 627 A.2d 630 (1993) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed.2d 410, 421 (1986)). "Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran*, *supra*, 475 U.S. at 421, 106 S. Ct. at 1141, 89 L.Ed.2d at 421 (internal quotation marks omitted). Factors relevant to this determination include defendant's age, education, and prior encounters with

law enforcement. *Knight, supra*, 183 N.J. at 462–63, 874 A.2d 546. A confession given when an individual is under the influence is not *per se* involuntary.

. . . [I]n the case at bar, the trial court recognized that [Petitioner] exhibited some degree of intoxication, however, the court determined that [Petitioner] knowingly waived his rights. As evidenced by the *Miranda* hearing proceeding and the court's observation of the interview tape, [Petitioner] appeared to be under the continuing influence of alcohol yet was capable of communicating with the detectives and was responsive in answering questions. In addition, he signed the buccal-sample form and the foreign national documentation. [Petitioner] volunteered particular details of the incident between him and the victim and demonstrated how the stabbing occurred. After the stabbing, [Petitioner] discarded the knife and walked to his workplace.

We turn now to [Petitioner's] claim that because he was illiterate and non-English speaking his waiver was not knowingly made. Intelligence and literacy are factors in the waiver inquiry but are not dispositive. . . . [Petitioner] may be illiterate but Brazofsky orally reviewed each right with him, in Spanish, and ensured he understood those rights. There is no evidence in the record to support any claim that [Petitioner's] asserted lack of intelligence impaired his ability to comprehend and appreciate the *Miranda* warnings, or to knowingly and intelligently waive them. The judge observed that there were a number of times during the interview when [Petitioner] used the words "uh," "uh-huh," and "yeah" as he spoke. The judge concluded from his viewing of the videotape and *voir dire* with [Petitioner] that these hesitations in speech were indicative of [Petitioner's] manner of communicating and his demeanor, and not a lack of understanding. In sum, although [Petitioner] was a native Spanish speaker and may have been intoxicated during the incident, the record does not reflect that his waiver, several hours later, was unintelligent or involuntary. Rather, the record before us indicates that [Petitioner] was aware of the consequences of his waiver and subsequent statements, and that [Petitioner] voluntarily made such statements. We therefore affirm the trial court's decision to admit [Petitioner's] custodial statements because substantial credible evidence supports the trial court's finding that [Petitioner] validly waived his *Miranda* rights.

*State v. Palacios-Rodriguez*, 2013 WL 4710521, at *3–8 (N.J. App. Div. Sept. 3, 2013).

The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination. *See Malloy v. Hogan*, 378 U.S. 1, 8 (1964). In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that "without proper safeguards the process of in-custody interrogation . . .

contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda*, 384 U.S. at 467. Pursuant to *Miranda* and its progeny, "suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation." *See Thompson v. Keohane*, 516 U.S. 99, 107 (1995); *Miranda*, 384 U.S. at 479.

When police ask questions of a suspect in custody without administering these required warnings, *Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief. *See Oregon v. Elstad*, 470 U.S. 298, 317 (1985). Thus, a confession taken during a custodial interrogation without the provision of *Miranda* warnings violates the privilege against self-incrimination. *See Thompson*, 516 U.S. at 107.

Conversely, a waiver of the right to remain silent renders self-incriminating, inculpatory statements admissible, and such waiver may be made orally, in writing, or even implied by the interrogated person's conduct. *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *United States v. Cruz*, 910 F.2d 1072, 1080 (3d Cir. 1990). Correspondingly, a trial court can properly admit a defendant's self-incriminating, inculpatory custodial statements if the court finds that the government met its preponderance-of-the-evidence burden of showing that the statements were made with a valid oral, written, or manifested-by-conduct waiver. *See Colorado v. Connelly*, 479 U.S. 157, 168–69 (1986).

The question of whether the waiver at issue was "valid" is, invariably, resolved on a case-by-case basis. This is so because, under *Miranda*, a waiver is valid if it is made "voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 475. In determining whether there has been

a valid waiver of *Miranda* rights, a court must conduct a two-part inquiry ensuing from the "totality of the circumstances" test. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986). First, the court looks to the voluntariness of the waiver statement (or of the implied waiver, that is, if the waiver ensued from the suspect's conduct, which conduct might be the suspect's very rendition of the self-incriminating, inculpatory statement at issue) in order to determine whether the waiver was made "freely," as opposed to being obtained by coercion. *See id.* "The ultimate issue of voluntariness is a legal question requiring an independent federal determination[.]" *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002) (citing *Miller v. Fenton*, 474 U.S. 103, 110 (1985)). "Thus, under the AEDPA standard, [a federal court is] required to determine whether the state court's legal determination of voluntariness was contrary to or an unreasonable application of Supreme Court precedent." *Id.* It is worth noting, however, that this Court will defer to state court fact finding under 28 U.S.C. § 2254(e)(1) as to "subsidiary fact questions" such as the credibility of witnesses who testified at the suppression hearing. *See Sweet v. Tennis*, 386 F. App'x 342, 345 (3d Cir. 2010).

Second, the court must consider whether the waiver statement (or the implied waiver, if the waiver ensued from the suspect's conduct) was made "knowingly and intelligently," in the sense that the accused was fully aware "both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421; *see also Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) ("The waiver inquiry has two distinct dimensions: waiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.") (internal quotations omitted).

In conducting the aforesaid analysis, the court must take into account "both the characteristics of the accused and the details of the interrogation," *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973), by evaluating the subject's age, education, experience, background, and intelligence, as well as the capacity to understand the warnings given, the length of detention, the nature of questioning, the use of physical punishment, if any (such as prolonged deprivation of food, water, sleep, access to toilet facilities). *See id.*; *see also Fare v. Michael C.*, 442 U.S. 707, 725 (1979); *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994). In addition, the "totality of circumstances" approach directs the court to be mindful of the subject's familiarity with the criminal justice system, the timing of the *Miranda* warnings and the statement given. *See United States v. Velasquez*, 885 F.2d 1076, 1086 (3d Cir. 1989); *see also Yarborough v. Alvarado*, 541 U.S. 652, 661-663 (2004).

In this case, the state courts properly applied the relevant Supreme Court precedent and found that Petitioner's *Miranda* rights had not been violated. Indeed, the Appellate Division reviewed and considered Petitioner's and the police's actions under *Miranda* and found that Petitioner understood his rights and voluntarily confessed to the stabbing, and thus, that the admission of the inculpatory statements which Petitioner provided in the course of his three-and-one-half-hour interrogation *after* being advised of his *Miranda* rights was proper. *State v. Palacios-Rodriguez*, 2013 WL 4710521, at *3-8 (N.J. App. Div. Sept. 3, 2013). In so doing, the state appellate court explicitly rejected the arguments again being advanced by Petitioner in his current habeas petition that the pre-confessional *Miranda* warnings he received were constitutionally deficient, *see id.* at *5, and that Petitioner, as a drunk, exhausted, and illiterate immigrant, was unable to knowingly and voluntarily waive his *Miranda* rights. *Id.* at *6-8.

The factual basis for these conclusions, which are summarized in the excerpt from the Appellate Division's opinion recounted above, are entitled to deference and must be "presumed to be correct." *See* 28 U.S.C. § 2254(e)(1). Petitioner can only overcome that deference by showing "by clear and convincing evidence" that those factual conclusions were unreasonable in light of the available evidence. *Id.* Petitioner has made no such showing. Having reviewed the extensive *Miranda* hearing record before the state trial court (*see* ECF Nos. 3-6 and 3-7), and the Appellate Division's opinion affirming Petitioner's conviction and sentence, this Court finds that the state courts' factual findings are, in fact, well supported by the evidence of record. Petitioner has presented nothing which would suggest otherwise, and has thus failed to overcome the presumption that the state courts' factual findings were correct. This Court's review of the state court record also confirms that the inculpatory statements provided by Petitioner on June 28, 2008 were indeed voluntary and not the product of an overborne will.

In light of the foregoing, this Court can only conclude that the state courts' *Miranda* rulings admitting Petitioner's statements into evidence were neither unreasonable applications of *Miranda* and its progeny, nor unreasonable applications of the facts, and that Petitioner is not entitled to habeas relief.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003). Because all of Petitioner's claims are either without merit or are otherwise insufficient to warrant habeas relief, Petitioner has failed to make a substantial showing of the denial of a constitutional right. As such, and because jurists of reason could not disagree with this Court's denial of Petitioner's habeas petition, Petitioner's claims are inadequate to deserve encouragement to proceed further and Petitioner is denied a certificate of appealability.

## IV. CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus (ECF No. 1) is DENIED and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

MADELINE COX ARLEO,
District Judge, United States District Court